# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN WADE LEWIS, | 1:06-CV-00039 SMS HC |
| Petitioner, | |
| v. | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| DERRAL G. ADAMS, Warden, | ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT FOR RESPONDENT |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties having voluntarily consented to exercise of Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1), by order dated XXXXXXX, this case was assigned to the undersigned for all purposes, including entry of final judgment.

## BACKGROUND[1]

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, following his conviction by jury trial on January 30, 1987, of second degree murder in violation of Cal. Penal Code § 187.

---

[1] This information is derived from the petition for writ of habeas corpus, Respondent's answer, and Petitioner's traverse.

1  See Exhibit 1, Answer.  Petitioner was sentenced to a term of 15 years to life in prison. See
2  Exhibit 3, Answer.
3       On December 2, 2003, a parole suitability hearing was held before the California Board
4  of Prison Terms ("BPT"). See Exhibit 2, Answer. Petitioner attended the hearing and was
5  represented by his attorney, David Shapiro. Id. At the conclusion of the hearing, the BPT denied
6  parole and deferred rehearing for one year.
7       Petitioner filed a petition for writ of habeas corpus in the Kern County Superior Court
8  challenging the BPT's decision. See Exhibit 3, Answer. In a reasoned decision, on August 25,
9  2003, the petition was denied because the majority of Petitioner's claims were not ripe since he
10 had not yet been found unsuitable for parole by the BPT. Id. When the BPT did find him
11 unsuitable, Petitioner filed a request for reconsideration with the Kern County Superior Court;
12 however, his request was denied. See Exhibit 4, Answer.
13       On May 12, 2004, Petitioner filed a petition for writ of habeas corpus in the California
14 Court of Appeals, Fifth Appellate District. See Exhibit 5, Answer. On June 24, 2004, the petition
15 was summarily denied. Id.
16       Petitioner then filed a petition for review in the California Supreme Court on August 9,
17 2004. See Exhibit 6, Answer. The petition was denied on August 31, 2005, with citation to In re
18 Dannenberg, 34 Cal.4th 1061 (2005), In re Rosenkrantz, 29 Cal.4th 616 (2002), People v.
19 Duvall, 9 Cal.4th 464, 474 (1995), In re Robbins, 18 Cal.4th 770, 780 (1998), In re Waltreus, 62
20 Cal.2d 218 (1965), and In re Swain, 34 Cal.2d 300, 304 (1949). Id.
21       On January 12, 2006, Petitioner filed the instant petition for writ of habeas corpus in this
22 Court. The petition for writ of habeas corpus challenges the underlying conviction and the
23 December 2, 2003, decision of the California Board of Prison Terms to deny parole; however,
24 Petitioner's ground for challenging the underlying conviction was dismissed by the District Court
25 on March 22, 2006. In his remaining claims for relief, Petitioner contends the decision was
26 arbitrary, and he argues California has a "no-parole" policy targeting murderers.
27       On August 23, 2006, Respondent filed an answer to the petition. Petitioner filed a
28 traverse to Respondent's answer on October 16, 2006.

# DISCUSSION

I.     Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

*quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state

court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

II.     Review of Claims

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision of the Board must be supported by "some evidence" having an indicia of reliability, Superintendent, Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128. In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Id. Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board. Id., *citing* Superintendent v. Hill, at 455-56. Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of

5

Parole, 833 F.2d at 1390.

With regard to the procedural protections outlined in Greenholtz, as Respondent submits, Petitioner was provided all that is required. Petitioner was provided with advance notice of the hearing, representation by counsel at the hearing, an opportunity to submit materials for the Board's consideration, an opportunity for him and his attorney to be heard during the hearing, and a written decision explaining the reasons that parole was denied. See Exhibit 2, Answer.

Petitioner, however, contends the BPT's decision was arbitrary and not supported by the evidence. Nevertheless, a review of Petitioner's parole hearing reveals that the BPT's decision is supported by some evidence. Specifically, the BPT found that Petitioner's 1985 murder offense "was carried out in a cruel fashion without any regard for the life and suffering of the very vulnerable victim, a 10 month old child."[2] See Exhibit 2, Answer. The BPT commented that the child had died of severe swelling of the brain as well as a skull fracture caused by a traumatic injury to the head. Id. The fact that Petitioner placed the limp and unresponsive child back into the crib for the mother to discover further supports the finding. Id. The BPT also found that the motive for the murder was inexplicable. Id. Based on the facts of the case, these findings were supported by some evidence.

The BPT also cited Petitioner's prior criminal history and failed attempts to correct his criminality as reasons for the denial. Id. This finding was based on Petitioner's escapes from juvenile hall, juvenile camp, and the Lerdo Facility. Id. In addition, the BPT noted that Petitioner failed to take responsibility for the crime until 1996, and further noted that Petitioner had only recently begun to participate in self-help programming. Id.

---

[2] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
  (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
  (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
  (C) The victim was abused, defiled or mutilated during or after the offense.
  (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
  (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

   Another reason the BPT cited for its decision was Petitioner's history of drug and alcohol abuse. The BPT read from a psychological report that Petitioner had still abused cocaine in 1996. <u>Id</u>. The BPT read a general chrono which indicated Petitioner had only started attending Alcoholics Anonymous meetings since June of 2002. <u>Id</u>. In addition, Petitioner admitted he had only been clean and sober since 1999. <u>Id</u>. Based on these facts, there is ample evidence supporting the BPT finding.

   In addition to his claims regarding the BPT findings, Petitioner also claims California has a "no-parole" policy targeting murderers. In support of his contention, he cites to the District Court's decision in <u>Coleman v. Board of Prison Terms</u>, Case No. 2:96-CV-00783 LKK PAN P. In <u>Coleman</u>, the District Court found that a no-parole-for-murderers policy existed under Governors Wilson and Davis. <u>Id</u>. Whether such a policy existed, Respondent correctly argues that this contention is moot. The remedy would be to grant Petitioner a fair parole suitability hearing. Petitioner received a hearing in 2005 under the administration of Governor Schwarzenegger and was still denied parole, and Petitioner has provided no evidence that such a policy exists under the current administration or that he was denied a fair and impartial hearing. Furthermore, there is no indication that any parole eligibility hearings held during Governor Schwarzenegger's tenure have been or would "be affected by a historical 'no parole' policy assertedly instituted by two previous governors." <u>Williams v. Schwarzenegger</u>, 2006 WL 2548217, *13 (E.D.Cal.2006).

   In light of the above, it cannot be said that the state court resolution of Petitioner's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).

///
///
///
///

**ORDER**

Based on the foregoing, it is HEREBY ORDERED that the petition for writ of habeas corpus is DENIED, and the Clerk of Court is DIRECTED to enter judgment in favor of Respondent.

IT IS SO ORDERED.

**Dated:**   **February 22, 2007**        /s/ Sandra M. Snyder
icido3                                       UNITED STATES MAGISTRATE JUDGE